IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DON-RICK, INC.,

                   Plaintiff,                  OPINION AND ORDER

     v.

                                                 13-cv-625-slc

QBE AMERICAS,

                   Defendant.

---

In this removal action for breach of contract, plaintiff Don-Rick, Inc. alleges that defendant QBE failed to pay contingent sales commissions for insurance products that Don-Rick sold on behalf of QBE. On September 16, 2013, QBE moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, claiming that QBE had no contractual obligation to pay Don-Rick contingent sales commissions and that Don-Rick can not bring a claim of bad faith under Wisconsin law. Dkt. 3. Soon after the briefing was completed on the motion to dismiss, Don-Rick filed an amended complaint adding claims of promissory estoppel and unjust enrichment. Dkt. 14. QBE responded with a second motion to dismiss, arguing that the amended complaint was untimely, and in the alternative, that it also fails to state a claim because QBE never promised to pay Don-Rick the discretionary bonus. Dkt 15.

In its reply, Don-Rick explained that it was unable to file the amended complaint by the deadline set in the preliminary pretrial conference order because the court's electronic filing system was down. QBE has accepted this explanation. As a result, I find that the amended complaint was timely and becomes the operative pleading in this case. Generally, the filing of an amended complaint would moot QBE's motion to dismiss the original complaint. *National Pork Producers Council v. Jackson*, 2009 WL 1255557, *1 (W.D. Wis. May 1, 2009); *Hypergraphics Press, Inc. v. Cengage Learning, Inc.*, 2009 WL 972823, *1 n.1 (N.D. Ill. Apr. 8, 2009). However,

QBE properly raised its original challenges to the breach of contract and bad faith claims in its second motion to dismiss, as well as challenges to the newly added claims of promissory estoppel and unjust enrichment.

Because I agree with QBE that the bonus commission program document did not constitute a contract, I am granting QBE's motion to dismiss with respect to the breach of contract and bad faith claims.  That, however, is not necessarily the end of it:  during the briefing of the motion to dismiss the amended complaint, Don-Rick submitted additional evidence that creates an question of fact as to whether QBE made a promise to pay Don-Rick a bonus commission for sales made in 2012.  With *this* evidence, Don-Rick can at least *state* a valid claim for promissory estoppel and unjust enrichment; however, Don-Rick  did not actually *do* so: the amended complaint does not reference or include the additional evidence.  So, the question is, what does fairness and efficiency require at this juncture?  Although we are fairly deep into the schedule, it seems everyone has been treading water while the dismissal motion was pending (a logical decision), so it would not be unfair to allow Don-Rick to file a second–and last–amended complaint that adds the appropriate allegations.

Apart from this, on January 28, 2014, QBE asked to extend the March 10, 2014 deadline to file summary judgment motions, to May 1, 2014.  *See* dkt. 21.  I am granting that motion in this order, and I am willing to grant a longer extension (and perhaps change the trial date) if the parties can make a case for actually needing more time in light of the conclusions reached in this order.

From the amended complaint and the documents attached to the motion to dismiss,[1] I draw the following facts, solely for the purpose of deciding the motion to dismiss:

FACTS

Plaintiff Don-Rick, Inc. and defendant QBE Holdings, Inc. are insurance companies. Between January 1, 2009 and March 4, 2013, Don-Rick was an agent of QBE and sold QBE policies pursuant to an agency agreement, which provided that:

> As full compensation for services, [QBE] shall pay [Don-Rick] commissions in accordance with the most recent commission schedule made part of this Agreement ("Exhibit B") on premium reported and paid to [QBE] on business written by [Don-Rick].

> Agreement § IV.a, dkt. 5, exh. 1 at p. 5.

Section IX of the agreement provided that either party could terminate the agreement for any reason with at least 90 days notice unless a longer period was required by law.[2]

As an additional benefit of being a QBE agent, Don-Rick became eligible to participate in the 2012 "QBE Premier Partner Contingent Commission Program" (or bonus commission program). The overview section of the document describing the bonus commission program states that an agent "can receive a bonus based on the profit You generate during the Bonus Year

---

[1] Along with its motion to dismiss, QBE submitted copies of the parties' Agency Agreement and written Contingent Commission Program provisions. Dkt. 5, exhs. 1 and 2. Although a court generally may not consider documents outside the pleadings in resolving a motion to dismiss, I may consider these documents because Don-Rick refers to them in the amended complaint, Don-Rick does not dispute the authenticity of QBE's submissions and both documents are central to Don-Rick's claims. *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009); *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

[2] The agreement also contains several other termination provisions that are not relevant here.

3

if You meet the requirements set forth in this Plan." Dkt. 5, exh. 2 at p. 1. The bonus

commission program has three eligibility requirements:

| | |
|---|---|
| **Active Agent** | You must be an active agent in good standing with Us at the time of payment. We will pay You no bonus if We have terminated Your agency authority, or if We have terminated Your involvement in this Plan, before payment is issued to You. |
| **Minimum Volume** | You must produce a minimum of $1,000,000 in combined QBE Personal and Commercial Lines Qualifying Written Premium. |
| **Profit Sharing Ratio Maximum** | Your Total Profit Sharing Ratio in the Bonus Year must be 64.0% or less |

*Id*. at p. 1.

Under a section entitled "General Program Provisions," the document also states that

- This program is separate from the Independent Agency Agreement between You and Us. . . .

- This program is not a contract and creates no legally binding rights or obligations for You or Us. We may cancel or amend this Program at any time without advance notification to You. Cancellation or amendment of this Program will be effective immediately and will control Our payment of a bonus to You, if any.

        *   *   *

- The profit sharing bonus payable under the terms and conditions as stated in this document will be determined at the end of each Bonus Year and paid to the agency within 90 days.

Dkt. 5, exh. 2 at 2.

QBE terminated the parties' agency agreement on March 4, 2013. Although Don-Rick

was eligible to participate in the 2012 bonus commission program and earned commission

payments in the amount of $75,000 that "were payable" prior to the termination of the agency

4

agreement, QBE refused to pay the money owed to Don-Rick.   At the time the bonus commissions were due, Don-Rick was an agent in good standing.


OPINION

QBE moves to dismiss each of Don-Rick's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.   In ruling on a Rule 12(b)(6) motion, the court accepts all well-pleaded allegations as true and draws all inferences in favor of the plaintiff.   *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted).   The complaint must include "enough facts to state a claim to relief that is plausible on its face," *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted), meaning that it must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).   As the Court of Appeals for the Seventh Circuit has explained, a complaint "must suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above a speculative level.'" *Equal Employment Opportunity Commission v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007)).


I.  **Breach of Contract**

Don-Rick alleges in its amended complaint that QBE failed to pay approximately $75,000 in commissions that it earned "during the period of the Agency Agreement" in violation of "that agreement and . . .  the Premier Partner Contingent Commission Program."  Dkt. 14 at ¶ 10.  QBE contends that it did not have a contractual obligation to pay Don-Rick a bonus commission because the contingent commission program is not a contract.

Under Wisconsin law, "[t]he burden of establishing the existence of a contract is on the person attempting to recover for its breach." *Household Utilities, Inc. v. The Andrews Co.*, 71 Wis. 2d 17, 236 N.W.2d 663, 669 (1976). According to Don-Rick, the commission program is enforceable as a unilateral contract, which occurs where only one party has made a promise and only that party is subject to a legal obligation. *See Paulson v. Olson Implement Co., Inc.*, 107 Wis. 2d 510, 527, 319 N.W.2d 855, 863 (1982) ("This is typified by the law school hypothetical situation where A says to B, 'If you walk across Brooklyn Bridge, I promise to pay you ten dollars.' A has made a unilateral contract which arises when–and if–B performs the act.") (quoting J. Calamari and J. Perillo, *The Law of Contracts*, 17-18 (2d ed. 1977)). QBE contends, however, that it never made a promise in the first place because the document describing the bonus commission program clearly states that: it is separate from the agency agreement, it is not a contract and it has no legally binding rights or obligations. QBE also points out that it reserved the right to cancel or amend the program at any time without notice.

Don-Rick dismisses the no-contract language as "legally irrelevant," noting that Wisconsin long has held that parties' characterizations or labels of a document are not controlling. *See, e.g., Rice v. Reich*, 51 Wis. 2d 205, 208, 186 N.W.2d 269, 271 (1971) (document entitled "joint driveway agreement" was actually an easement and not a lease); *M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 501, 536 N.W.2d 175 (Ct. App. 1995) (statement in residency agreement that "This Agreement is not a lease" did not determine whether agreement was in fact a lease); *Clay v. Horton Mfg. Co., Inc.*, 172 Wis. 2d 349, 355, 493 N.W.2d 379 (Ct. App. 1992) (employee handbook disclaimers that policies not part of employment contract not conclusive). Although that may be true, the fact that such language

6

*may* not be dispositive does not mean that it is always irrelevant.  For example, and as QBE points out, the state appellate court in *Clay* explained that the disclaimer was not conclusive because "it is possible for a company through its agents to modify an employment contract to include company policies notwithstanding the disclaimer, if both parties intend to do so."  172 Wis. 2d at 355 (citing *Garvey v. Buhler*, 146 Wis.2d 281, 286-87, 430 N.W.2d 616, 618-19 (Ct. App. 1988)).  As a result, the court found it "necessary to determine the intent of both Clay and Horton Manufacturing regarding the terms of the employment relationship."  *Id.*  The same is true in this case.

"In Wisconsin the binding quality of a writing depends on the intent of the parties." *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814 (7ᵗʰ Cir. 1987) (citing *Garrick Theater Co. v. Gimbel Bros., Inc.*, 158 Wis. 649, 656, 149 N.W. 385, 388 (1914); *Milwaukee Medical College v. Marquette University*, 208 Wis. 168, 170–71, 242 N.W. 494, 496 (1932); *Peninsular Carpets, Inc. v. Bradley Homes, Inc.*, 58 Wis.2d 405, 415–16, 206 N.W.2d 408, 413 (1973)).  Further, "[t]he status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves."  *Id.* at 814-15.  Here, the unsigned document describing the bonus commission program[3] clearly states that it is not a binding contract and allows QBE complete discretion to change or cancel the program without notice.  Wisconsin courts have found that such disclaimers in employee handbooks evince the parties' intent not to form a contract.  *See, e.g., Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 981, 473 N.W.2d 506, 509 (Ct. App. 1991) (employee handbook not contract where it expressly

---

[3]  Although Don-Rick implies otherwise, the parties' signed agency agreement is silent with respect to *bonus* commissions.

disclaimed existence of contract, employer reserved right to amend policy without notice and progressive discipline stated in permissive and not mandatory terms); *Helland v. Kurtis A. Froedtert Memorial Lutheran Hospital*, 229 Wis. 2d 751, 762, 601 N.W.2d 318, 323 (Ct. App. 1999) (language reserving employer's right to unilaterally modify policies and procedures in the employment relationship refuted assertion that contractual relationship existed).

Applying Illinois law, the Court of Appeals for the Seventh Circuit similarly has found that an employee policy manual was not a contract where the manual disclaimed any purpose to bind the parties. *See Freeman v. Chicago Park District*, 189 F.3d 613, 617 (7th Cir. 1999) ("The employee handbook specifically disclaims that it is a contract, and the handbook itself is the best evidence of whether the parties intended to form a contract."); *Doe v. First National Bank of Chicago*, 865 F.2d 864, 873 (7th Cir. 1989) ("We fail to see how a document which clearly disclaims in unambiguous language any purpose to bind the parties can constitute 'a promise clear enough that an employee would reasonably believe that an offer has been made.'").[4] *See also Workman v. United Parcel Serv., Inc.,* 234 F.3d 998, 1000 (7th Cir. 2000) (stating generally that disclaimer that employee handbook not a contract is complete defense to suit for breach of contract based on handbook).

---

[4] Don-Rick attempted to distinguish these cases as inconsistent with Wisconsin law, which expressly recognizes that employee handbooks and manuals *can* constitute binding contracts that modify the at-will status of an employee. *See Ferraro v. Koelsch*, 124 Wis. 2d 154, 157-58, 165, 368 N.W.2d 666, 668, 672 (1985) (express contract created when employee accepted employee handbook that promised discharge would be only for just cause); *Garvey v. Buhler*, 146 Wis. 2d 281, 287, 430 N.W.2d 616, 618 (Ct. App. 1988) (question of fact remained for trial on whether company policies created implied contract that employee would be fired only on receipt of three pink slips in six-month period). Although this is correct as a general matter, the Wisconsin Supreme Court also has made clear that not all personnel manuals or employee handbooks will have this effect. *Ferraro*, 124 Wis. 2d at 169. As shown in *Bantz* and *Helland*, what matters is the language in the manual itself. *See Ferraro*, 124 Wis. 2d at 168-69 (emphasizing importance of looking at handbook at issue to discern parties' intent); *Bantz*, 163 Wis. 2d at 979 (employment manual may alter at-will employment relationship only if it contains express provisions from which parties' intent to bind each other to different relationship can be inferred).

QBE also cites several cases from other jurisdictions in which courts have concluded that "contract formation does not occur when an employer retains absolute discretion or a unilateral right to modify or cancel employee commission[s]." *Schwarzkopf v. Int'l Bus. Machines, Inc.*, 2010 WL 1929625, *8 (N.D. Cal. May 12, 2010) (citing *Stinger v. Stewart & Stevenson Servs., Inc.*, 830 S.W.2d 715, 720 (Tex. App. 1992) (commission arrangement not contractually binding due to employer's reservation of discretion); *Rakos v. Skytell Corp.*, 954 F. Supp. 1234, 1237–38 (N.D. Ill. 1996) (no contract where defendant "retained the right to modify or cancel the Plan at any time without prior notice" and so did not provide "a clear right to bonus commissions"); *Foss v. Am. Tel. & Telegraph Co.*, 199 A.D.2d 668, 605 N.Y.S.2d 143, 144 (1993) (language authorizing defendant to "reduce, modify, or withhold compensation or noncash awards based on . . . management determination of special circumstances at any time for any reason with or without prior notice" conferred no rights on plaintiff)). *See also Jensen v. IBM, Corp.*, 454 F.3d 382, 385-88 (4th Cir. 2006) (because IBM retained discretion to cancel or modify incentive program at any time up until it made payment under the plan, there were no conditions employee could satisfy to create binding contract before IBM decided to pay him); *Rudolph v. IBM*, (N.D. Ill. Aug. 21, 2009) (granting judgment on pleadings for IBM where plan allowed employer to modify or cancel compensation agreement at any time for any reason; not reasonable for employee to believe that offer had been made).

As in the above cases, QBE retained absolute discretion in this case over the payment of bonuses in its arrangement with its agents. *Cf. Schwarzkopf*, 2010 WL 1929625, *8 (IBM did not retain complete discretion because employee sales commission plan (or "quota letter") only allowed IBM to adjust or cancel program up until payments had been earned).

9

Don-Rick attempts to distinguish *Schwarzkopf*, *Jensen*, *Geras* and *Rakos* on the ground that these cases all involved the defendant's discretion to reduce or adjust the *amount* of the commission or otherwise contained language that made the bonus calculation indefinite, whereas QBE's bonus commission program provided clear standards for calculating bonuses. As QBE notes, however, this distinction is of no consequence because what the court found persuasive in each of these cases was the fact that the document at issue expressly disclaimed that it was a contract and generally reserved the right to modify or cancel the plan. Although the issue in *Schwarzkopf* was whether the employer had retained the discretion to adjust the *amount* of the payment, 2010 WL 1929625 at *7, this was not the case in *Jensen*, *Geras* and *Rakos*. *See, e.g., Rakos*, 954 F. Supp. at 1237 ("The Plan, however, did not create an enforceable contract as a matter of law because it did not contain a clear right to bonus commissions. Defendant clearly retained the right to modify or cancel the Plan at any time without prior notice. Such a statement is an effective disclaimer to negate any possible promissory intent.").

Don-Rick argues that while QBE included a general disclaimer that it could cancel or modify the terms of the program, it also clearly stated that the bonus would be determined at the end of each bonus year and paid to the agency within 90 days. According to Don-Rick, it was entitled to its bonus once it had been earned. However, the bonus commission program document does not say this. This document specifically provides that QBE would not pay any bonus if QBE had terminated Don-Rick's agency authority or involvement in the program *before payment is issued*. Because Don-Rick admits that it had not yet received a payment, Don-Rick was not entitled to a payment. As both parties point out, the plan at issue in *Jensen* contained similar language, and the court of appeals found that "IBM made clear that there were no

10

conditions that Jensen could satisfy to create a binding contract before IBM decided to pay him." 454 F.3d at 388. The same is true here.

Don-Rick asserts that the conclusion reached in *Jensen* and similar cases runs afoul of Wisconsin's procuring cause doctrine, which provides that sales commissions are due and payable according to the terms in effect when the commission is earned. *See Loth v. City of Milwaukee*, 2008 WL 129, ¶ 45, 315 Wis. 2d 35, 758 N.W.2d 766. ("[O]nce work is performed while a contract or unilateral promise is in effect, permitting retroactive revocation of that promise would be unjust and inequitable."); *Zweck v. DP Way Corp.*, 70 Wis. 2d 426, 430-31, 234 N.W.2d 921 (1975) (selling agent earns his commission when he procures an order and the order is received by the company). Don-Rick's argument is a non-starter, because in order for this doctrine to apply, the agent first must be entitled to the commission pursuant to an agreement. *Zweck*, 138 Wis. 2d at 430 ("the commissions were earned prior to the termination of the sales agent agreement"). As just explained, there was no such agreement in this case.

In a final argument, Don-Rick contends that whether QBE intended to make a promise and form a contract is a question of fact that should be left for summary judgment or trial. However, Don-Rick fails to allege any facts that even suggest that QBE modified the program—either verbally, in writing or through its actions—in a manner that affected QBE's disclaimer that the program document was not a contract. *See Household Utilities*, 71 Wis. 2d at 29 (parties' intent "derived from a consideration of their words, written and oral, and their actions"). Don-Rick can not state a valid claim for breach of contract without any allegation that QBE intended something different from what is clearly expressed in the bonus commission program document.

11

In sum, QBE made no promise to Don-Rick regarding the payment of a bonus commission. Wisconsin courts have long made clear that "[w]hen a party to a contract promises to do a thing but in the same promise says it reserves an unrestricted right not to do the thing promised, what results is an illusory contract." *Hegel v. Brunswick Corp.*, 09-C-882, 2010 WL 2900379, *3 (E.D. Wis. July 20, 2010). An illusory contract is unenforceable and arises when a contract is "conditional on some fact or event that is wholly under the promisor's control and his bringing it about is left wholly to his own will and discretion." *Nodolf v. Nelson*, 103 Wis.2d 656, 660, 309 N.W.2d 397 (Wis. Ct. App. 1981) (quoting 1 Corbin on Contracts § 149, at 656–59 (2d ed.1963)). The bonus commission program document provides QBE total discretion to cancel the program and any payments associated with the program at any time up until such payments are actually made. Therefore, even if the document is valid, all that resulted was an unenforceable illusory contract and Don-Rick's alleged performance could not change the result. *See Hegel*, 2010 WL 4068490 at *1 (finding same); *Devine v. Notter*, 2008 WI App 87, ¶ 4, 312 Wis. 2d 521, 524-25, 753 N.W.2d 557, 559 (because no contract exists, neither party has cause of action for breach). Accordingly, the breach of contract claim must be dismissed.

## II. Bad Faith

In response to QBE's challenges to what QBE construed as a tort claim of bad faith, Don-Rick clarifies in its response brief that it is asserting a violation of the implied covenant of good faith and fair dealing. However, as QBE points out, a duty of good faith and fair dealing can be implied and supply missing provisions only when there is a contract in the first place. *Hegel*, 2010 WL 4068490 at *2; *see also Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 608

F.2d 1351, 1357 (7th Cir. 1990) ("When the contract is silent, principals of good faith . . . fill the gap."); *Brethorst v. Allstate Property & Casualty Insurance Co.*, 2011 WI 41, ¶52, 334 Wis. 2d 23, 47, 798 N.W.2d 467, 480 (covenant arises out of relationship created by contract; "[i]f there is no contract, the insurer has no duty to act in good faith with respect to a claim"). Don-Rick has not pointed to any missing term in the contract but rather asks the court to create an entire contract. This is too broad of an interpretation of the implied duty of good faith and fair dealing. *Hegel*, 2010 WL 4068490 at *2.

## III. Promissory Estoppel

Don-Rick has amended its complaint to add a promissory estoppel claim as an alternative to its breach of contract claim. Promissory estoppel is a equitable or quasi-equitable common law doctrine intended to protect parties that have not entered into a contract but nonetheless incurred damages acting in reliance on promises made by another party. *Knauf Realty, LLC v. Prudential Real Estate Affiliates, Inc.*, 486 F. Supp. 2d 855, 861 (W.D. Wis. 2007) (citing *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 697-98, 133 N.W.2d 267 (1965)). The Court of Appeals for the Seventh Circuit has explained that

> The doctrine of promissory estoppel provides an alternative basis to consideration for treating a promise as a contractual undertaking. When applicable, which to say when the promise is definite enough to induce a reasonable person to rely, *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267, 275 (1965); *Cosgrove v. Bartolotta*, 150 F.3d 729, 733 (7th Cir. 1998) (applying Wisconsin law); *State Bank of Standish v. Curry*, 442 Mich. 76, 500 N.W.2d 104, 108 (1993) ("the sine qua non of the theory of promissory estoppel is that the promise be clear and definite"); *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn. 1995); E. Allen Farnsworth, Contracts § 2.19, p. 95 (3d ed. 1999), the doctrine makes the promise enforceable.
>
> *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 868 (7th Cir. 1999).

13

To prevail on a promissory estoppel claim under Wisconsin law, a plaintiff must show that (1) there was "[a] promise that the promisor should reasonably have expect[ed] to induce action or forbearance of a definite and substantial character on the part of the promisee;" (2) the promise "induce[d] such action or forbearance;" and, (3) the "injustice can be avoided only by enforcement of the promise." *Hoffman*, 26 Wis. 2d at 698. *See also Beer Capitol Distributing, Inc. v. Guinness Bass Import Co.*, 290 F.3d 877, 880 (7th Cir. 2002) (citing similar but four-factor standard). A promise "is a manifestation of intent by the promisor to be bound, and is to be judged by an objective standard." *Major Mat Co. v. Monsanto*, 969 F.2d 579, 583 (7th Cir. 1992). As Judge Crabb explained in *Knauf Realty*, "[t]he critical requirement is that the 'promise' be 'one that the promisor should reasonably have expected to induce either action or forbearance' by the plaintiff; [o]therwise, the promisee has no basis for insisting upon enforcement of the promise." 486 F. Supp. 2d at 861 (quoting *U.S. Oil Co. v. Midwest Auto Care Services, Inc.*, 150 Wis.2d 80, 89, 440 N.W.2d 825, 828 (Ct. App. 1989)).

As discussed at length above, the bonus commission document did not make a definite promise on which a reasonable party could have relied. QBE clearly stated in that document that it had no intention to be bound. As a result, it would not have been reasonable for Don-Rick to rely on that document as a "promise" by QBE to pay a bonus commission even once Don-Rick had made the necessary sales.

In conjunction with its response to QBE's motion to dismiss the amended complaint, however, Don-Rick submitted the following additional documents (*see* dkt. 18) not referenced in either its original or amended complaint:

1. A December 16, 2011 letter to Don-Rick referring to the bonus program as "our 2012 profit-sharing offering."

2.      A Contingent Calculation Statement from QBE stating that the "greater of the calculation at the end of third quarter or year end" would be "guaranteed" if Don-Rick elected to "insure" its third-quarter results by October 16, 2012.

3.      A "3rd Quarter Commission Calculation Statement and Lock-In Election Form" that Don-Rick completed on October 10, 2012. By choosing "yes" on the form, Don-Rick authorized QBE "to Lock-in [its] Profit Sharing Bonus minus a 15% fee."

4.      An email from QBE to Don-Rick notifying Don-Rick that QBE "will honor your original lock-in with the higher payment amount."

Don-Rick contends that these documents are consistent with its promissory estoppel claim and support the allegation that QBE made promises about what it was entitled to receive under the bonus commission program.[5]

QBE contends that the additional evidence is not properly before the court because the only documents that the court can consider in addition to the complaint when considering a motion to dismiss are documents attached to the complaint, central to and referred to in the complaint, and information subject to judicial notice. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Although this is true, the court will accept a motion from Don-Rick to amend its complaint a second time to add allegations related to the above statements made by QBE. As noted at the outset of this order, at this relatively early stage of this lawsuit, a second amended complaint would not result in either undue delay or significant prejudice to QBE. *See* Fed. R. Civ. P. 15(a)(2) (court should freely give leave to amend when justice so requires); *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004) (delay alone insufficient reason to deny motion to amend without showing of undue prejudice to opposing party).

---

[5] Because Don-Rick has not argued that these documents support its breach of contract claim, I have not considered them in that context.

Given the new allegations, I agree that there is an issue of fact as to whether QBE made a promise in its *subsequent* statements to Don-Rick about the guarantee of its bonus commissions. The third-quarter election forms and QBE email state that QBE would "guarantee" a particular bonus if Don-Rick took the additional step of insuring its third-quarter results. It is reasonable to conclude from this language that QBE should have expected that this would induce Don-Rick to take action (by insuring the sales), and it would be equally reasonable for Don-Rick to rely on QBE's assurances that the bonus amount was locked in. Although QBE attempts to downplay the significance of these statements, these arguments are best dealt with on summary judgment or at trial. For now, Don-Rick has succeeded in stating a claim for promissory estoppel. Accordingly, I will deny QBE's motion to dismiss the promissory estoppel claim contingent on Don-Rick promptly amending its complaint to include the subsequent statements made by QBE. The deadline will be next Friday, February 14, 2014. Earlier would be even better.

## IV.  Unjust Enrichment

"To establish a claim for unjust enrichment, the plaintiff must prove three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Buckett v. Jante*, 2009 WI App 55, ¶ 10, 316 Wis. 2d 804, 767 N.W.2d 376 (citation omitted). Don-Rick contends that it would be inequitable for QBE to retain the benefit of Don-Rick's increased sales without paying the bonus for them.

16

QBE argues that did not unjustly retain any benefit because it paid Don-Rick a full commission on all the sales that it made.  In support of its argument, QBE cites the Wisconsin Supreme Court's decision in *Goff v. Massachusetts Protective Association, Inc. of Worcester, Mass.*, 46 Wis. 2d 712, 716, 176 N.W.2d 576, 579 (1970), in which an insurance agent relied on an unjust enrichment theory to argue that he was entitled to commissions on the renewal of policies that he had procured in the first instance, even though his employment agreement expressly precluded payment for renewal commissions following his termination.  The court held that "[w]hile it may be argued Goff is being treated unjustly, this does not constitute unjust enrichment in a legal sense.  Under the doctrine of unjust enrichment, the basis for recovery is that a person has received something of value under circumstances which in equity and in good morals he ought not keep but should return."  *Id.*

Don-Rick argues that *Goff* is distinguishable, however, because the agreement at issue in that case expressly stated that the insurance company had no duty to pay Goff.  I agree.  If Don-Rick timely submits a properly amend complaint, then Don-Rick will have alleged that it placed business with QBE that it otherwise would not have placed and then "insured" the additional business for the sole purpose of "locking in" its bonus commission.  QBE knew this but went back on its word and refused to pay the bonus.  This is sufficient to state a claim for unjust enrichment.

ORDER

IT IS ORDERED that:

(1)   Defendant QBE's Americas's motion to dismiss (dkts. 3 and 15) plaintiff Don-Rick, Inc.'s breach of contract and bad faith claims is GRANTED.

(2)   Defendant's motion to dismiss the promissory estoppel and unjust enrichment claims (dkt. 15) is DENIED, contingent on Don-Rick amending its complaint to include the additional evidence referenced in this opinion.  Don Rick's deadline to file a second amended complaint is February 14, 2014.

(3)   Defendant's motion to extend to May 1, 2014 the deadline to file dispositive motions (dkt. 21) is GRANTED.  Additional time is available if the parties can make a case for it.


Entered this 3rd day of February, 2014.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge